IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE CRUDUP, | ) |
| Plaintiff. | ) Civil Action No: |
| v. | ) **COMPLAINT** |
| CITY OF OMAHA, a Political Subdivision, | ) **Jury Trial Demanded** |
| Defendant. | ) |

Comes now Plaintiff Jane Crudup ("Plaintiff" or "Ms. Crudup"), by and through her undersigned counsel, hereby files this Complaint against the City of Omaha or "Defendant," and states and alleges as follows:

## I.      PRELIMINARY STATEMENT

As of September 27, 2020, the City of Omaha Fire Department employed 35 African-American firefighters out of a total of 647 firefighters, representing only 5.5 percent of sworn personnel, even though 12 percent of the City of Omaha, is African-American. On September 27, 2020, in a statement made to the Omaha World-Herald, the City of Omaha's Chief Firefighter Dan Olsen said, "he appreciates the value of a diverse workforce."[1]

---

[1] Christopher Burbach, *Omaha Police Ahead of Fire on Diversity Efforts*, Omaha World-Herald, Sept. 27, 2020, at A1.

## II. NATURE OF THE ACTION

This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to seek redress against Defendant, the City of Omaha for unlawful harassment and discrimination based on race, color and gender committed against Plaintiff by Defendant, in violation of: 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et.seq*. (Title VII), 42 U.S.C. Section 1981 and the Nebraska Fair Employment Practices Act Neb. Rev. Stat. Section 48-1101, *est. seq*., for unlawful employment practices including retaliation against Plaintiff for her complaints, specifically harassment and discrimination on the basis of race, gender and color and violations against Plaintiff's constitutional rights.

## III. JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. Sections 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under federal law. This Court has supplemental subject matter jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. Sections 1367(a).

2. Venue is proper in this district pursuant to 28 U.S.C. Sections 1391(b) and (c) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## IV. ADMINISTRATIVE PROCEDURES

3. On or about April 14, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Nebraska Equal Opportunity Commission ("NEOC"). These charges of discrimination arose out of the same facts alleged herein. On November 9, 2020, Plaintiff received a Notice of Right to Sue from the EEOC and

NEOC. This action was timely filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

4. Plaintiff has complied with any and all other prerequisites to filing this Action.

## V. PARTIES

5. Plaintiff, Jane Crudup is a resident of Douglas County, State of Nebraska.

6. On or around January 14, 2019, the City of Omaha hired Plaintiff as a full time Firefighter.

7. Plaintiff is currently employed by the City of Omaha as a Firefighter.

8. At all relevant times, Plaintiff met the definition of an "employee."

9. At all relevant times, Defendant has continuously been a political subdivision doing business in the State of Nebraska and the City of Omaha, Nebraska. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. Section 2000e-(b), (g) and (h). At all relevant times, Defendant has employed at least fifteen (15) employees.

10. At all relevant times, Todd Dippel, white male, was Plaintiff's supervisor with the title of Fire (Engine) Captain and an employee, agent or servant of the City of Omaha, Nebraska.

11. At all relevant times Scott Schendt, white male, was Plaintiff's supervisor with the title of Fire (Truck) Captain and an employee, agent or servant of the City of Omaha, Nebraska.

12. At all relevant times Dan Olsen, white male, was the Plaintiff's superior with the title of Omaha Fire Chief and an employee, agent or servant of the City of Omaha, Nebraska.

## VI. FACTUAL BACKGROUND

13. Plaintiff, Ms. Jane Crudup is an African-American female.

14. On or about January 14, 2019, Plaintiff was hired to perform full time employment as a Firefighter I for the City of Omaha.

15. In over the 150-year history of the City of Omaha, Plaintiff was only the fifth, African-American female firefighter hired and retained by the City of Omaha.

16. Plaintiff began her career as firefighter, working at Station 42, located at 3120 N. 102 St. Omaha, Nebraska 68134.

17. While at Station 42, Plaintiff reported to Captain John R. Shoemaker, a white male.

18. During Plaintiff's time at Station 42, Plaintiff was in "probationary status," which required her to learn the duties of her position as a Firefighter I, through various methods, including but not limited to studying written materials.

19. In the firefighter 12-week Academy training, Plaintiff was told by instructors, that studying written materials related to learning her position as a firefighter was allowed while on duty or before 8:00 pm.

20. However, Captain John Shoemaker, a white male, told Plaintiff that studying was not allowed while on duty—per order of Battalion Chief Jerry Anderson, white male. Studying was only allowed after 8 pm or at home and as such, Plaintiff complied and did study written materials, while on duty or before 8 pm.

21. On or around May 4, 2019, Plaintiff was transferred per customary condition of her "probationary status" to work at Station 41, located at 4515 N. 61 St. Omaha, Nebraska 68104.

22. At Station 41, Plaintiff reported to Captain Scott Schendt and Captain Todd Dippel, both white males.

23. While at Station 41, Plaintiff was allowed to study written materials related to learning her position as a Firefighter while on duty or before 8:00 p.m.

24. On or around, February 2020, Mark Lukowski, a white male "probationary status" transferee, (similarly situated to Plaintiff) into Station 42, under Captain John Shoemaker's supervision was allowed to study while on duty or after 8:00 p.m., while Plaintiff was unable to do so, during her time at Station 42.

25. At the time, Stations 41 and 42 were both under the supervision of Battalion Chief Jerry Anderson, a white male.

26. Plaintiff was similarly situated to Mark Lukowski, a contemporary white male "probationary candidate" however, he was allowed to study written materials, while on duty or before 8:00 p.m., at Station 42, under the supervision of Captain John Shoemaker, a white male.

27. Captain John Shoemaker, a white male, displayed disparate treatment of Plaintiff at Station 42, when compared to a similarly situated white male, thus altering the terms of employment to Plaintiff's detriment.

28. On or around June 7, 2019, at Station 41, Plaintiff's supervisor, Captain Scott Schendt, a white male told Plaintiff to "shut up and listen to what others are trying to say" in response to a hydrant drill training session when Plaintiff addressed concerns of feeling dehumanized and talked down to, during the training session, by firefighter, Heath Reyzlik, a white male. This statement created mistrust and misgivings between Plaintiff and supervisor Captain, Scott Schendt, a white male.

29. While in "probationary status" Plaintiff's supervisor, Captain Scott Schendt, a white male further told Plaintiff "you need to learn how to take a joke and laugh at yourself, if you want

5

to have some longevity with the Fire Department." This statement created deeper mistrust and misgivings between Plaintiff and supervisor Captain Scott Schendt, a white male.

30. On or around October 2019, Plaintiff's supervisor, Captain Scott Schendt, a white male, made the remark, "I would shoot it" in response to watching a television show called, *Tosh.0* at Station 41, where a white female actor self-identified as an African-American female, in the episode's plot. Plaintiff was in the kitchen doing dishes, and overheard Captain Scott Schendt make this remark. Captain Scott Schendt's comment further compromised Plaintiff's trust and the fire department's commitment to diversity.

31. After Plaintiff's work shift on March 2, 2020, Plaintiff in the course of her employment, left her turnout gear—which consists of Plaintiff's personal firefighter coat, pants, boots and helmet at Station 41 where she worked and was to report to work on March 3, 2020, after an off-site routine training emergency medical examination.

32. On March 3, 2020 after Plaintiff completed her emergency medical examination, Plaintiff reported to Station 41 to find her turnout gear hanging from public flagpole. The manner in which Plaintiff's turnout gear was positioned was alarming. Plaintiff found her helmet hanging above her firefighting coat, displayed in an order, simulating a hanging or public lynching of Plaintiff.

33. Upon discovery, Plaintiff entered Station 41 and addressed the public hanging of her helmet above her firefighting coat simulating a hanging or lynching of Plaintiff with a paramedic firefighter, Derrick McMillan a white male. No firefighter at Station 41 admitted culpability.

34. Plaintiff's supervisor Captain Scott Schendt, a white male, saw Plaintiff's helmet hanging above her firefighting coat, displayed in an order, simulating a hanging or public lynching of Plaintiff on a public flagpole, yet he failed take corrective measures.

35. Plaintiff took a picture of her hung helmet and firefighting coat displayed in an order, simulating a public hanging or lynching, from the public flagpole, then took her turnout gear down from the public flagpole.

36. Plaintiff who was distraught, distressed, embarrassed and dehumanized called fellow African-American female Firefighter, Sheena Glover—the fourth African-American female firefighter hired by the City of Omaha, for assistance, guidance and emotional support.

37. Plaintiff's supervisor, Captain Scott Schendt, a white male was aware of the harassment and discriminatory behavior; however, he did not address the issue with Plaintiff nor was any action taken against the perpetrator or perpetrators of Plaintiff's public hanging or lynching simulation of her helmet above her firefighting coat.

38. On or around March 14, 2020, during a routine run for fuel for Truck 41, Firefighter Chris Vacek, a white male, attempted to drive off while Plaintiff was climbing in from fueling Truck 41, causing her to almost fall from the moving truck. When Plaintiff confronted Firefighter Chris Vacek, a white male about compromising Plaintiff's health and safety, thus creating a potentially perilous situation for her, Chris Vacek laughed and said, "I thought you were inside the truck." When Plaintiff said "No, I was not." Chris Vacek changed his response, to, "I thought you decided to go with Truck 53" [which simultaneously pulled up for fuel]. Plaintiff's supervisor Captain Scott Schendt, a white male was present on Truck 41 and witnessed Chris Vacek's behavior, yet he failed to act or correct.

39. Plaintiff was confirmed as a Firefighter, ending her "probationary status" on April 2, 2020 and was thus transferred to Station 61 on April 4, 2020, located at 11111 I St. Omaha, Nebraska 68137.

40. On April 12, 2020, Sheena Glover—the fourth African-American female firefighter hired and retained by the City of Omaha, sent an e-mail on behalf of Plaintiff, who was still distraught, distressed, embarrassed and dehumanized, to the following: Fire Chief Dan Olsen, a white male; Omaha's Deputy Chief of Staff, Carrie Murphy, a white female, Local 385 President Steve LeClair, a white male and Labor Relations Director, David Grauman, a white male. They were all provided details of the harassment with photographic evidence of the hanging of Plaintiff's helmet and firefighting coat, with helmet above firefighting coat, displayed in an order, simulating a public hanging or lynching on a public flagpole.

41. By April 12, 2020, Fire Chief Dan Olsen, a white male; Omaha's Deputy Chief of Staff, Carrie Murphy, a white female, Local 385 President Steve LeClair, a white male and Labor Relations Director, David Grauman, a white male were all provided details of Plaintiff's harassment claim with photographic evidence of the hanging of Plaintiff's helmet and firefighting coat, with helmet above firefighting coat, displayed in an order, simulating a public hanging or lynching on a public flagpole. No corrective action was taken.

42. While Plaintiff was working at Station 61, on or around April 17, 2020, a used surgical mask was stuffed deep inside Plaintiff's boot. Plaintiff was the sole African-American female at Station 61. The harassment continued.

43. While working at Station 65, located at 7010 S. 142 St, Omaha, Nebraska 68138, under Captain Mike Schmitz, a white male, on or around May 4, 2020, Plaintiff's personal helmet was tampered with, specifically, the strap was pulled in a way that compromised the helmet's use. Plaintiff was the sole African-American female at Station 65. The harassment continued.

44. On or around May 26, 2020, Plaintiff, distraught, distressed, embarrassed and dehumanized, addressed the harassment and discriminatory acts, internally by completing an Omaha Fire

Department Form 25 (OFD-25), which detailed facts consistent with those found herein. This prompted an internal investigation of harassment based on race, color and gender, pursuant to *Executive Order No. S-33-16.*

45. On July 24, 2020, the City of Omaha's investigation was completed by Omaha Labor Relations Director, David Grauman, a white male.

46. Plaintiff's claim of harassment based on race, sex and color, completed by the City of Omaha in conjunction with the Omaha Fire Department concluded that during Plaintiff's candidacy it was "undisputed" that Plaintiff was subjected to harassment, yet the City of Omaha's appallingly described what Plaintiff was subjected to, including the hanging of Plaintiff's helmet and firefighting coat, with helmet above firefighting coat, displayed in an order, simulating a public hanging or lynching on a public flagpole of Plaintiff, as a "prank", 'joke or "hazing."

47. Second, Plaintiff's claim of harassment based on race, sex and color, completed by the City of Omaha in conjunction with the Omaha Fire Department concluded the abhorrent harassing experiences inflicted upon Plaintiff were actually "pranks" and "jokes" done as "training moments" to "teach" Plaintiff "crucial lessons" related to work as a Firefighter, including but not limited to, unquestionable factual allegations of harassment by Plaintiff and photographic evidence of the hanging of Plaintiff's helmet and firefighting coat, with helmet above firefighting coat, displayed in an order, simulating a public hanging or lynching on a public flagpole of Plaintiff.

48. Third, the City of Omaha's perfunctory investigation findings of Plaintiff's claim of harassment described the Plaintiff's allegations as "unsubstantiated" in spite of the evidence provided, to the City of Omaha, including but not limited to, unquestionable factual

allegations of harassment by Plaintiff and photographic evidence of the hanging of Plaintiff's helmet and firefighting coat, with helmet above firefighting coat, displayed in an order, simulating a public hanging or lynching on a public flagpole of Plaintiff.

49. Fourth, the investigation uncovered an admission of culpability by Firefighter Heath Reyzlik, a white male—with regards to the hanging of Plaintiff's helmet and firefighting coat, with helmet above firefighting coat, displayed in an order, simulating a public hanging or lynching on a public flagpole. Labor Relations Director, David Grauman, white male, extenuated Firefighter Heath Reyzlik's harassing and discriminatory behavior towards Plaintiff, by describing it as "that's Reyzlik", further downplayed, by David Grauman as he [Health Reyzlik] was a "freaking a-hole" and a "jerk to me", during my investigation. No corrective action was taken by the City of Omaha.

50. Fifth, the investigation resulted in the "exoneration" of Firefighter Heath Reyzlik, the white male perpetrator who hung Plaintiff's turnout gear from a public flagpole with helmet above firefighting coat, displayed in an order, that simulated a public hanging or lynching of Plaintiff.

51. Sixth, Omaha Labor Relations Director, David Grauman, described Firefighter Chris Vacek's decision to compromise Plaintiff's health and safety, by driving off while Plaintiff was attempting to climb back on the Truck 41 after re-fueling, thus as creating a potentially perilous situation for her, as "something that is not condoned" with "no excuse for that behavior" further acknowledging that "something needs to be changed." However, no corrective action was taken, by the City of Omaha.

52. Seventh, the City of Omaha's investigation of Plaintiff's claim of harassment cited blanket "testimonial" findings of two African-American male firefighters, who allegedly denied

"seeing or experiencing racial discrimination or harassment at Station 41." This insignificant investigatory finding by the City of Omaha was used to erroneously and perfunctorily conclude that Plaintiff, herself was not personally subjected to discrimination or harassment while at Station 41.

53. Ultimately, the City of Omaha's investigation findings and determination of Plaintiff's claim of harassment and discrimination was "unsubstantiated" and framed by David Grauman, Labor Relations Director as "hazing for the purpose of training." Moreover, David Grauman's investigation revealed that harassment couched as "joking", "pranks" or "hazing" is "how fire departments work", which according to Labor Relations Director, David Grauman's investigation has "been going on for well over 100 years."

54. Plaintiff has been on leave from her work as a firefighter since May 22, 2020, due to various psychiatric comorbidities and mental anguish proximately caused by subjected discrimination and harassment based on race, sex and color, stemming from her employment with the City of Omaha as a Firefighter.

55. The City of Omaha is down to one active African-American female firefighter.

56. The City of Omaha has a history of African-American female firefighters filing harassment or discrimination complaints against their employer, Omaha Fire Department.

57. Plaintiff's job performance was satisfactory.

## VII. FIRST CAUSE OF ACTION| DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII

58. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

59. Plaintiff was subjected to unwelcome offensive conduct from her co-workers and supervisors employed by the Defendant, thereby creating a hostile and harassing environment, as Plaintiff's supervisors knew or should have known about the harassment, having participated in and/or encouraged the harassment or ignored the harassment after Plaintiff's complaints.

60. Such conduct was based on Plaintiff's race, sex or color.

61. The hostile environment affected a term, condition, or privilege or her employment.

62. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended.

### VIII.   SECOND CAUSE OF ACTION
### VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICES ACT
### HOSTILE WORK ENVIRONMENT

63. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

64. Plaintiff was subjected to unwelcome offensive conduct from her co-workers and supervisors employed by the Defendant that created a hostile environment.

65. Such conduct was based on Plaintiff's race, color or gender.

66. The hostile environment affected a term, condition, or privilege or her employment and

67. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Nebraska Fair Employment Practices.

### IX.     THIRD CAUSE OF ACTION
### UNLAWFUL HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. § 1981

68. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

69. Plaintiff was subjected to unwelcome offensive conduct from her co-workers and supervisors employed by the Defendant that created a hostile environment.

70. Such conduct was based on Plaintiff's race or color;

71. The hostile environment affected a term, condition, or privilege or her employment and

72. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; and other emoluments of employment.

73. The above-mentioned harassment, discrimination was severe and pervasive creating a hostile work environment in violation of 42 U.S.C. § 1981.

74. The unlawful employment practices were willful and intentional, and Defendant knew and showed reckless disregard for the fact that its conduct was prohibited by Title VII and FEPA.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of 42 U.S.C. § 1981.

## X.  FOURTH CAUSE OF ACTION
## EQUAL PROTECTION

75. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

76. Defendant City of Omaha, Nebraska, through its agents, servants and employees, established an official policy, practice or custom of reckless or deliberate indifference to persons in the position of Plaintiff.

77. Defendant City of Omaha, Nebraska has discriminated against African-American women by establishing, maintaining and enforcing policies which create or foster a hostile work environment, by treating African-American women differently and by retaliating against those, including Plaintiff, who complain about and/or refuse to "learn how to take a joke and laugh at yourself, if you want to have some longevity with the Fire Department" or refuse to "shut up and listen to what others are trying to say", thus creating a hostile work environment.

78. In the alternative, if the discriminatory practice of establishing, maintaining and enforcing policies which create or foster a hostile work environment, by treating African-American females differently than white men and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance hostile work environment was not a policy of the City of Omaha, it was a practice, procedure or custom which the City of Omaha and its policy makers, who had actual or constructive knowledge.

79. Plaintiff was subjected to this official policy or custom while she was employed by City of Omaha.

80. Defendant City of Omaha's policy, custom or practice in general and as applied to Plaintiff in particular, was purposeful and intentional.

81. Defendant City of Omaha deprived Plaintiff of her rights to which she is entitled under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, all in violation of 42 U.S.C. §1983.

82. Plaintiff has been damaged as a direct and proximate result of the Defendants' acts and omissions aforesaid.

WHEREFORE, Plaintiff prays for judgment against Defendants, City of Omaha, Nebraska, Chief Olsen, Captain Dippel and Captain Schendt, in their official capacities, in an amount which will fully and fairly compensate her for her injuries and damages for attorney's fees and costs, for interest as allowed by law and for such other and further relief as is just in the premises.

## XI. FIFTH CAUSE OF ACTION
## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII RETALIATION

83. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

84. Plaintiff complained to Defendant about the harassment she experienced and otherwise opposed practices made unlawful by Title VII of the Civil Rights Act of 1964, as Amended.

85. Defendant retaliated against Plaintiff because of her complaints and opposition to harassment.

86. Plaintiff's gender, race and her protected activity were motivating factors in Defendant's retaliation against her.

87. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended.

### XII.   SIXTH CAUSE OF ACTION
### VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICES ACT
### RETALIATION

88. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

89. Plaintiff complained to Defendant about the harassment she experienced and otherwise opposed practices made unlawful by Title VII of the Civil Rights Act of 1964, as Amended.

90. Defendant retaliated against Plaintiff because of her complaints and opposition to harassment.

91. Plaintiff's gender, race or color and her protected activity were motivating factors in Defendant's retaliation against her.

92. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Nebraska Fair Employment Practices Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare Defendant's conduct to be in violation of Title VII of the Civil Rights Act of 1964, Section 701, et seq., 42 U.S.C. Section 2000e, et seq., 42 U.S.C. Section 1981, 42 U.S.C. §1983 and of Neb. Rev. Stat. Section 48-1104 et seq., the FEPA;

b. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race, color and harassment.

c. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment.

d. Award Plaintiff compensatory relief, in an amount determined at trial, for emotional distress, humiliation, embarrassment, stress, depression, injury to reputation, mental anguish and anxiety, and other compensatory damages, as a result of Defendant's violation of Title VII of the Civil Rights Act of 1964, Section 701, et seq., 42 U.S.C. Section 2000e, et seq., 42 U.S.C. Section 1981 and of Neb. Rev. Stat. Section 48-1104, et seq., the FEPA;

e. Award Plaintiff punitive and exemplary damages in an amount determined at trial as a result of Defendant's willful and intentional violation of Title VII of the Civil Rights Act of 1964, Section 701, et seq., 42 U.S.C. Section 2000e, et seq. and 42 U.S.C. Section 1981;

f. Award Plaintiff for reasonable attorneys' fees and costs to the fullest extent permitted by law; and

g. Grant Plaintiff such other further relief as may be just and equitable.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all matters raised in this Complaint.

Dated this 5th day of February 2021.

BY: s/ *Potso Mahlangeni-Byndon*
Mr. Potso Mahlangeni-Byndon #43031
Attorney for Plaintiff
2016 Fowler Avenue
Omaha, NE 68110
(402) 570-1287
potso@byndonlaw.com