IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JANE CRUDUP, | ) | CASE NO. 8:21CV0045 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF OMAHA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Prepared and submitted by:
MICHELLE PETERS, No. 20021
Deputy City Attorney
Attorney for Defendant
804 Omaha/Douglas Civic Center
1819 Farnam Street
Omaha, NE 68183
(402) 444-5115
michelle.Peters@cityofomaha.org

This brief is submitted by the Defendant City of Omaha in reply to Plaintiff's brief in opposition to Defendant's Motion for Summary Judgment. This is an employment case in which Plaintiff generally alleges a series of discriminatory events occurred during her brief employment as a firefighter with the City of Omaha Fire Department. Plaintiff alleges violations of the Nebraska Fair Employment Practices Act, Title VII of the Civil Rights Act, and Equal Protection under the U.S. Constitution. For the reasons set forth herein, Defendants are entitled to judgment as a matter of law; and Plaintiff's Complaint must be dismissed.

## UNDISPUTED FACTS

Respondent submits the following in comments response to Plaintiff's allegations of disputed facts. Plaintiff does not present any dispute of material fact. In most cases, Plaintiff is splitting hairs or is simply supplementing what are statements of fact. The following paragraphs Plaintiff labels as "DISPUTED."

8. This matter is not in dispute. Captain Schendt and Captain Dipple both testified to this occurrence. (Dipple Deposition, 42:14-43:23, 44:10-20; Schendt Deposition 25:5-26:17) Plaintiff did not testify that this conversation did not occur, she stated she couldn't remember the conversation. Regardless, the fact is not material and whether or not Plaintiff remembers the discussion is not a matter that will negate Summary Judgment.

14. and 25d.   Again, this matter is not in dispute. The statement was made to both Plaintiff and Firefighter candidate Lukowski. Plaintiff thinks because she was the one arguing with Captain Schendt it was directed more toward her, but regardless of her perception, he didn't say "Crudup shut up and listen." Whether Captain Schendt was looking at Plaintiff only,

both she and Firefighter candidate Mark Lukowski were present when the statement occurred. Plaintiff admitted it was a directive given to both of them.

> Q: But that directive was given to you and Lukowski; is that correct?
>
> A: Yes.

(Crudup Deposition 45:14-16)

17., 19., and 20. These statements are not in dispute. Whether or not Plaintiff has seen other firefighters' gear up the flagpole is immaterial to whether or not it actually happened. Defendant has provided affidavits from firefighters whose identities were developed through discovery and their testimony cannot be disputed. Plaintiff could have deposed them and she chose not to. Moreover, Plaintiff's reliance on Interrogatory No. 3 is misplaced. That Interrogatory provides as follows:

**INTERROGATORY NO. 3:** Name all white firefighters currently employed who, in the course of their employment, participated or facilitated in the act of suspending a helmet and coat from a flagpole, in that order, that belonged for an African American firefighter, as a training mechanism, without their consent.

**ANSWER:** The Omaha Fire Department does not track this information, so it is not possible to answer this question.

To the extent that Plaintiff is suggesting that the City is somehow admitting that the hanging of fire gear did not previously occur, that was not the question asked or the answer given. Plaintiff wanted the names of any white firefighters who hung the gear on flagpoles and the Defendant does not have that information. A different answer would have been provided had Plaintiff asked for the names of the people who have had their gear run up the flagpole.

18. This matter is not in dispute. Plaintiff is relying on an unsworn statement that Firefighter Vacek gave to Mr. Grauman. Firefighter Vacek was not deposed so any reference to what

he may have said is not admissible in this or any other proceeding.

26. This fact is not in dispute. Plaintiff may have complained to another Firefighter (Sheena Glover), but that person was not in a supervisory capacity. Ms. Glover did indeed send an email to the chain of command, but that wasn't until April 12, 2020. Plaintiff never reported any of these instances of inappropriate behavior to any supervisor.

28. Plaintiff is parsing words. She was told she needed to take her gear with her. If there was any question about whether it was to EMS training OR testing, she should have asked for clarification. Plaintiff admits that she intentionally left her gear at the station even though training personnel and co-workers at the station told her she needed to bring her gear with her at all times. (Crudup Deposition 61:11-62:16) In addition, Plaintiff admits the following: "Being that it got hung, I'm going to say I probably shouldn't have made the decision to leave my gear, even though I consciously made that decision." (Crudup Deposition 63:11-14)

29. This fact is not in dispute. Plaintiff stated Firefighter Glover "Said you probably should have took your gear with you, but they shouldn't be touching your gear." (Crudup Deposition 68:12-19)

34. This fact is not in dispute. Plaintiff stated in her deposition regarding her boots up the flag pole:

    A: I had went to – the engine had to go on a run to Immanuel to like a kids carnival, and I had forgot my boots off to the side by the wall. And so when I came back, basically everyone in the station was out recording with the camera, laughing. They had the neighbor's dog wrapped around the flagpole with his daughter sitter there and they were kind of laughing and recording and I had to get my boots.

    Q. Did you find that offensive?

    A. I thought it was distasteful. The difference between that though was all of them was out there recording and laughing. So was like, okay, they think this is funny, this

is a joke. I thought it was distasteful, and I said, okay, I won't forget my boots and stuff anymore. Although Plaintiff thought running her boots up the flag pole was distasteful, but not offensive, she said, "okay, I won't forget my boots and stuff anymore."

(Crudup Deposition 64:2-20). Plaintiff twice said it was "distasteful."

35. This matter is not in dispute. FF McMillin attempted to engage Plaintiff, and asked "hey, Jane, how you doing?" (Crudup Deposition 67:4-5). She responded, "no, like don't talk to me after this. Like are you serious? Don't talk to me after this. I don't understand why y'all think this is cool." (Crudup Deposition 67:6-8). FF McMillin responded "what do you mean?" (Crudup Deposition 67:9). Plaintiff responded "no, no." (Crudup Deposition 67:9)

44. This fact is not in dispute. Again, Plaintiff adds information, which is fine, but does not negate Defendant's factual statement. Defendant didn't allege that Plaintiff was at Station 41 when Mr. Grauman offered to move her. In addition, this dispute of fact directly contradicts what Plaintiff is now alleging in her supplemental affidavit (Doc. #65-5). In that document she states: "During the investigation, Mr. Grauman offered to move me, but at the time, he provided that I was no longer at Station 41. But after I left Station 41, the harassment started to increase in frequency … I knew at that point I was not safe anywhere in the department." Moreover, Mr. Grauman advised Plaintiff that at any time she wanted to move, to let him know and Plaintiff never took him up on the offer. (Crudup Deposition 80:17-23)

50. This fact is not in dispute Plaintiff states in her First Amended Complaint that she "has been on unpaid leave" from the Omaha Fire Department since May 22, 2020 (First Amended Complaint Doc. #56, ¶ 54). Whether it is medical leave or administrative leave is not a material fact.

52. This fact is not in dispute. The letter Mr. Grauman issued on July 24, 2020 speaks for itself. (Deposition Exhibit 9) In addition, what facts Mr. Grauman found or didn't find are not relevant to this matter. Whether or not there were policy violations and what he looked at in reaching his conclusions are distinct from this Court's determination of whether state or federal laws or the Constitution was violated.

Again, in resisting summary judgment, the Plaintiff may not rest on the allegations in her pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). An "adverse party may not rely merely on allegations or denials, but must set out specific facts – by affidavits or other evidence – showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Fed. R. Civ. P. 56(e)). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

Plaintiff also lists her own factual statements. Those statement are not individually numbered, so it is not possible for the Defendant to easily respond. However, generally, Defendant does not dispute Plaintiff's factual statements, with a few exceptions. Defendant disputes Plaintiff's characterizations of the incidents described by Plaintiff on page 5 of Doc. #63 involving Chris Vacek.

Defendant also disputes Plaintiff's claims that Mr. Grauman's investigation was a "sham." (Plaintiff's Brief, Doc. #63, p. 8)

Defendant disputes that Doug Krysl failed to investigate various things. Mr. Grauman was in charge of the investigation and Krysl helped him with some of the investigations. Defendant also disputes Plaintiff's allegation that "Since at least 2014, the Fire Department had no formal specific anti-harassment or anti-discrimination training." (Plaintiff's Brief, Doc. #63, p. 9) Plaintiff's reliance on Request for Admission misstates the response. Request No. 13 asks for a specific response and one was given. Plaintiff's broad strokes are not accurate.

Plaintiff's diatribe of the "could be's" in Section (e) of the factual statements (Plaintiff's Brief, Doc. #63, pg. 10) was based on the hypotheticals posed to Mr. Grauman during his deposition. As with any good investigator, Mr. Grauman admitted that at first blush, he had an open mind and considered that hanging of Plaintiff's gear on the flagpole "could be" a violation of several City of Omaha policies. Upon the completion of his investigation, however, he found that not to be the case. However, even if Mr. Grauman's investigation had found violations of city policy, such policy violations do not rise to violations of laws or the constitution. The Eighth Circuit has recently reiterated that rule with regard to police internal investigations. In *Christiansen v. Eral,* No. 21-3885, 2022 WL 16546084 (8th Cir., Sept. 21, 2022), the Eighth Circuit Court of Appeals stated:

> Federal law subjects to suit persons who, under color of state law, deprive a person "of any rights, privileges, or immunities secured by the Constitution and laws." *See* 42 U.S.C. § 1983. We've repeatedly explained that police department guidelines and policies do not create rights that give rise to a § 1983 action. *See Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993).

*Id.* at *3.

The Court goes on to state that even if the defendant knew that his behavior was a violation of policies,

>his knowing violation of departmental policy doesn't transform his actions into unconstitutional behavior. [Plaintiff] may be subject to internal discipline from the department, but the constitution doesn't rise and fall with the whims of each police department's policies, which are fee to go above and beyond what the constitution or federal law requires.

*Id.* (citation omitted).

Plaintiff cannot show that there is any genuine issue of material of fact in dispute.

## ARGUMENT

### I.

### RACE DISCRIMINATION
### (First, Second and Third Causes of Action)

Plaintiff still fails to articulate whether she is relying on direct or indirect evidence to support this claim. Nor is it clear what Plaintiff's actual argument is with regard to the adverse employment action. To the extent Plaintiff is alleging that her adverse employment action is her "constructive discharge," that allegation will be covered *infra.*

Plaintiff also seems to argue (for the first time) that the City forced her to take unpaid sick leave. For this argument she inappropriately relies on *Jackman v. Fifth Judicial Dist. Dept. of Corr. Servs.,* 728 F.3d 800 (8th Cir. 2013). That case actually held that the depletion of sick leave was NOT an adverse employment action as required to establish a prima facie case of discrimination or retaliation. *Id.* at 805.

Plaintiff still cannot overcome the undisputed facts that she was not treated any differently than white employees who were similarly situated. Plaintiff seems to suggest that this is a novel idea when, in fact, this is what the law actually requires. Again assuming we are relying on indirect evidence of discrimination, then Plaintiff must create an inference of discrimination by proving the following elements: "[s]he (1) is within the protected class, (2) was qualified to perform her

- 7 -

job, (3) suffered an adverse employment action, and (4) was treated differently than similarly situated employees who were not members of the protected class." *Wilkie v. Dep't of Health & Human Servs.,* 638 F.3d 944, 954–55 (8th Cir.2011).

Plaintiff can split hairs and parse the words of the affiants all she wants. At the end of the day, they are all similarly situated employees who had their clothing or gear run up the flagpole. These names were obtained through Plaintiff's depositions of other employees. Plaintiff had the opportunity to depose these affiants, and she chose not to do so.

Plaintiff also seems to argue that Defendant was somehow "hiding the ball" when it came to the identities of these firefighters. First, Plaintiff's Interrogatories were proffered well in advance of the depositions wherein these names were learned. Second, as previously argued, *supra,* Plaintiff did not ask for the identities of the persons who had their gear ran up flagpoles. She requested the identities of the people who ran the gear up the flagpole. (See response to "Disputed Fact 17, 19 and 20," *supra).*

There are not two different stories. The only actual facts is the information in the affidavits that Plaintiff cannot contradict. There is no issue of fact and Plaintiff has not created one just because of her lack of discovery. Defendant is entitled to Summary Judgment on this claim.

## II.

### HOSTILE WORK ENVIRONMENT
### (Fourth, Fifth and Sixth Causes of Action)

With regard to Plaintiff's complaint of hostile work environment, she has not presented evidence that the conduct was so severe and pervasive to affect a term or condition or her employment. *Powell v. Yellow Book USA, Inc.,* 445 F.3d 1074, 1077 (8th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). Furthermore, the work environment must be

both objectively and subjectively offensive, meaning a reasonable person would find the work environment hostile or abusive, and, further, that Plaintiff actually perceived the environment as such. *Id.* at 958–59. Plaintiff alleges she was severely traumatized by events at Station 41 over a period of approximately one year. As previously argued, three or four comments made over a one-year time period are not so severe or pervasive enough to constitute a Title VII claim, and a **reasonable** person would not find the work environment hostile or abusive, as those terms are defined in the relevant case law. Finally, Plaintiff cannot show that the Defendant knew or should have known about the harassing behavior. Plaintiff failed to take proper action – or really any action at all -- to alleviate it because she admits she did not report any of the inappropriate conduct. Other than running the PPE up the flag pole, the only incidents that Plaintiff alleges are very minor off-handed comments or actions by co-workers, generally not even directed at the Plaintiff. These are not the types of behaviors that the federal law was intended to regulate.

Plaintiff's argument that the workplace "permeated with discriminatory intimidation, ridicule, and insult" is mere hyperbole and not supported by the undisputed facts. There and no material facts in dispute and Defendant is entitle to judgment as a matter of law.

### III.

### EQUAL PROTECTION
### (Seventh Cause of Action)

Plaintiff presents no evidence to support this allegation in her responsive brief and will not be able to provide any at the time of trial. The City may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of the right protected by the constitution or federal laws. *Monell v. Department of Social Services,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The undisputed facts, which Plaintiff cannot contradict, show that the

Omaha Fire Department had no official policy regarding hanging a firefighter's helmet and coat from a flagpole. Plaintiff cannot show that the Omaha Fire Department has any official act or policy for running fire gear up a flag pole. It has occurred before, and other non-black males have been subjected to this type of treatment, but there is no "policy" that supports this behavior. This behavior is certainly not condoned by anyone with actual policy making authority (i.e. the Fire Chief, the Mayor or the City Council).

Plaintiff has now pled a "failure to train" allegation to attempt to resurrect this dead claim. Plaintiff's own cited case law fails to support this claim. In *Connick v. Thompson,* 563 U.S. 51 (2011), the Supreme Court found that:

> A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,* 489 U.S., at 388, 109 S.Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.,* at 389, 109 S.Ct. 1197.
>
> " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty.,* 520 U.S., at 410, 117 S.Ct. 1382. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.,* at 407, 117 S.Ct. 1382.

*Id.* at 61. This is a very tough standard to meet and Plaintiff has fallen woefully short. The Fire Department has engaged in diversity and discrimination training and was never put on notice that hanging of the gear was a problem. When it was brought to the attention of the Fire Department,

they took immediate steps to rectify the situation and changed their policy. (See Undisputed Fact #54).

Defendant is entitled to Summary Judgment on this claim.

## IV.

## RETALIATION
### (Eighth, Ninth, and Tenth Causes of Action)

Plaintiff's argument that she has exhausted her administrative remedies is without merit, and she knows this claim is dead in the water. Plaintiff tries to argue some nonsense about "notice" or that her retaliation claim "grew out of discovery." As argued in Defendant's initial brief, the federal framework sets out very clear requirements that a complaining party has to meet. Understanding that the administrative charges are given broad consideration, all she probably had to do was check the box labeled "retaliation" on the intake form. She didn't even do that. This claim was not appropriately identified or investigated by the NEOC, and this claim MUST be dismissed for failure to exhaust administrative remedies.

Although Defendant agrees that the requirements of a written charge to the NEOC is broadly viewed, there has to be some attempt to put the Defendant on notice. And despite Plaintiff's allegations to the contrary, the City was not on notice of her retaliation claims. The claimant has a responsibility to "distinctly and separately present these two claims [discrimination and retaliation] in the EEOC charge, and they are not 'like or reasonably related' to any claims asserted there." *Carter v. Wessels*, No. 8:20CV324, 2020 WL 6707203, *3 (D. Neb. Nov. 13, 2020), quoting *Parisi v. Boeing Co.,* 400 F.3d 583, 84-86 (8th Cir. 2005).

In the present case, Plaintiff checked the boxes of "race," "color," and "sex." (See Defendant's Exhibit 8) So, she clearly knew she could have checked more than one box. In her

EEOC charge, Plaintiff did not check any box to indicate retaliation and did not make any statement or claim of retaliation whatsoever. Any allegation of retaliation would have arisen prior to the time of filing of the Charge which took place on 11/7/20. (See Defendant's Exhibit 8) She failed to exhaust administrative remedies with respect to that claim and it must be dismissed.

Moreover, Plaintiff cannot meet the prima facie requirements of retaliation, and therefore, Defendant is entitled to Summary Judgment on this claim for all of reasons stated herein and in Defendant's initial brief.

Plaintiff spends a great deal of time in this section (and others) arguing the finer points of Mr. Grauman's investigation. This ploy is smoke and mirrors. As indicated *supra,* the internal investigation of an employer, its findings, and whether or not there were policy violations is irrelevant to whether there were violations of law and/or the constitution. See *Christiansen v. Eral,* No. 21-3885, 2022 WL 16546084 (8th Cir., Sept. 21, 2022). "Just because [a defendant] chose to violate department policy doesn't mean he acted unreasonably from a constitutional perspective or with malicious intent to harm [plaintiff]. To hold otherwise would open a backdoor permitting [plaintiff] to escape the well established and commonsense notion that only the constitution and laws can create constitutional and legal rights." *Id.*

Plaintiff also inappropriately raises an issue regarding her Injured on Duty and/or Worker's Compensation status. This matter is not appropriately litigated in an employment action. Plaintiff may or may not have a right to Worker's Compensation benefits under Nebraska law. That is not for this court to determine but should be litigated through the Nebraska Worker's Compensation Court and through the laws of the State of Nebraska. Moreover, the undisputed facts show that Plaintiff's claim for IOD was denied on July 7, 2020 by Corvel. (Crudup Depo. 101:2-5) Plaintiff did not depose anyone from that organization or anyone from the City who was involved with that

decision. Mr. Grauman, Labor Relations Director, spoke generally about the Work Comp process, but he had no involvement in the decision to grant or deny her Injured on Duty status. (Grauman Deposition 207: 7-17). Nor did Fire Chief Daniel Olsen participate in any way in the determination of IOD benefits for the Plaintiff. (Olsen Deposition 66:25-67-21)

In that regard, Plaintiff also seems to attempt to make some hay about the fact that the City had an independent medical examiner and that she did not receive a copy of that report. On or about May 2, 2020, Plaintiff submitted a note from her own treating physician that she was not able to return to work. Plaintiff has submitted such a note every couple of months since that time stating the same thing. The notes never asked for any type of accommodation. After several months, the City had its own medical professional examine her and Dr. Conner confirmed the diagnosis of Plaintiff's doctor. Whether or not Plaintiff received a copy of that report is a red herring and has no real relevance to this case. Whether or not Plaintiff is Fit for Duty does not equate to automatic Worker's Compensation benefits.

Because Plaintiff cannot show a prima facie case of race discrimination, these claims must be dismissed as a matter of law.

V.

**CONSTRUCTIVE DISCHARGE**

As the Plaintiff acknowledges, constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit. *Brenneman v. Famous Dave's of America, Inc.,* 507 F.3d 1139, 1144 (8th Cir. 2007). Plaintiff has the burden of proving that 1) a reasonable person in her situation would find the working conditions intolerable and (2) the employer intended to force her to quit. *Id.* Plaintiff has presented no

evidence supporting either requirement.

With regard to the helmet issue, although Captains Schendt and Dipple may have known about it, the Fire Chief, the Mayor and the HR director didn't know about it until April 12, 2020 at which time an investigation commenced. But before the investigation could be completed, Plaintiff left work on May 20, 2020. As the law requires, "A reasonable employee has 'an obligation not to assume the worst and not to jump to conclusions too quickly. An employee who quits without giving [her] employer a reasonable chance to work out a problem has not been constructively discharged.'" *Brenneman,* 507 F.3d at 1144, quoting *Duncan v. Gen. Motors Corp.,* 300 F.3d 928, 935 (8th Cir. 2002).

In this case, a constructive discharge claim must fail for a plethora of reasons: 1) Plaintiff did not quit her position as firefighter with the City until well after this lawsuit was filed; 2) as set forth in Defendant's initial brief, Plaintiff's working conditions were not intolerable to a reasonable person; and 3) Plaintiff did not give the City a reasonable chance to work out a solution.

First, the timing of Plaintiff's decision to quit is quite suspect. During her deposition, defense counsel asked Plaintiff about coming back to work and the following discussion occurred:

> Q: Do you want to go back to the fire department?
>
> A: I don't know. I'm still working on, like just feeling safe and feeling like I can trust the individuals that I'm working around 24 hours a day.
>
> Q: What, if anything, could the City of Omaha do to make you feel safe in coming back to work?
>
> A: I don't know. It's like – I just feel like coming back from something – like mental harm is so hard to get over. And so for me it's like, okay yeah, I wanted to do that particular job, but when you're failed at…

(Crudup Depo. Vol I 83:15-84:3)

Then a month later, May 30, 2022, Plaintiff tendered her resignation.

Second, Plaintiff's two stated issues of retaliation were minor incidents wherein Plaintiff cannot prove either who did it or if there was any actual retaliatory intent. No reasonable person would have found that the working conditions so intolerable that she was compelled to resign.

Third, Plaintiff did not give the City a reasonable time to work out the issues. She contacted the City on April 12, 2020 and the City immediately commenced an investigation. Within a month she went on admin leave. The City had the investigation done by July 2020 and the Fire Department worked quickly and amended their policy in May of 2020.

Plaintiff's actions were not reasonable and Defendant is entitled to summary judgment on this claim because, even giving Plaintiff the benefit of all reasonable assumptions, the facts are not in dispute and Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For all the reasons set forth herein and in Defendant's initial Brief in Support of Motion for Summary Judgment, Defendant is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P 56.

DATED this 6th day of December, 2022.

CITY OF OMAHA, Defendant

By s/Michelle Peters
   MICHELLE PETERS, #20021
   Deputy City Attorney
   Attorney for Defendants
   804 Omaha/Douglas Civic Center
   1819 Farnam Street
   Omaha, NE 68183
   (402) 444-5115
   michelle.peters@cityofomaha.com

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(3), I hereby certify this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Office Word 2010, this document contains 4768 words. The word-count function was applied to all text, including the caption, headings, footnotes, and quotations.

s/ Michelle Peters
Deputy City Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2022, I electronically filed the foregoing **REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which sent notification to such filing to the following: Potso Mahlangeni-Byndon, 2016 Fowler Ave., Omaha, Ne 68110.

/s/Michelle Peters