```
                                                                    1

 1              IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEBRASKA
 2
      JANE CRUDUP,                     )
 3                                     ) Case No.
                 Plaintiff,            ) 8:21CV0045
 4                                     )
          v.                           )
 5                                     )
      THE CITY OF OMAHA,               )
 6                                     )
                 Defendant.            ) TAKEN IN BEHALF
 7    _____) OF PLAINTIFF

 8    APPEARANCES:

 9    Mr. Potso Mahlangeni-Byndon         For Plaintiff
      Attorney at Law
10    2016 Fowler Avenue
      Omaha, NE 68110
11    potso@byndonlaw.com

12    Ms. Michelle Peters                 For Defendant
      Deputy City Attorney
13    CITY OF OMAHA LAW DEPARTMENT
      Omaha/Douglas Civic Center
14    1819 Farnam Street, Suite 804
      Omaha, NE 68183
15    michelle.peters@cityofomaha.org

16

17

18

19

20

21           DEPOSITION OF DAVID J. GRAUMAN, taken

22    at 10:01 a.m. on March 31, 2022, Deanna L. Maley,

23    RMR, CRR, and General Notary Public in and for

24    the State of Nebraska, at 1819 Farnam Street,

25    Suite 804, Omaha, Nebraska.
```

THIBAULT, SUHR & THIBAULT, INC.
402-331-2500 * www.courtreporteromaha.com

DEFENDANT'S EXHIBIT 4A

1  different items that were brought from Village
2  Inn. And the firefighters -- after the house had
3  taken what the firehouse needed, firefighters
4  were encouraged to grab any remaining items and
5  take them home if they wanted.
6     Q.    So it sounds like you investigated
7  pretty much the entire array of her complaints,
8  with the exception of the mask incident, the
9  helmet incident, and --
10    A.    The study.
11    Q.    -- the study incident.
12    A.    Correct.
13    Q.    Does that sound about right?
14    A.    Yes. All of the -- a lot of these
15  things you've just refreshed my recollection on
16  the different allegations she made. I
17  investigated the matters -- and I'm summarizing
18  to some extent. But I investigated the matters
19  related to Station 41 and the firefighters at
20  Station 41. Doug Krysl investigated the matters
21  that were outside of Station 41.
22    Q.    Can you tell me the names of the
23  individuals he interviewed?
24    A.    From reading the emails you provided
25  me today, he talked to Captain Shoemaker. I

1    indication in terms of granting IOD status?  Yes
2    or no?  Can he do that?
3            MS. PETERS:  I'm going to object on
4    foundation.  If you know, you may answer.
5         A.   Again, my understanding is Chief
6    Olsen would have no involvement in that process.
7         Q.   Okay.  You have no idea why she was
8    not granted IOD status; correct?
9         A.   No, I was in no way involved in her
10   review -- her workers' compensation case, the
11   review of that IOD claim.  I generally -- again,
12   don't quote me, I'm not an expert in this.  I
13   believe for a mental health issue, I think there
14   has to be some relation to a physical
15   manifestation of that, I believe.  But you'd have
16   to talk to one of our attorneys or Zach Wagner on
17   that issue.
18        Q.   Okay.  Okay.  All right.
19        A.   And I guess I'll qualify it as well.
20   They could have said it wasn't work-related as
21   well.  So there's a couple factors there like
22   that.
23            MR. BYNDON:  Okay.  That's all I
24   have, Counsel.  You can go.
25                    CROSS-EXAMINATION